UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ALBERTO SALDARRIAGA
SALDARRIAGA, on behalf of himself
and others similarly situated,

                Plaintiff,                                **MEMORANDUM AND ORDER**
                                                              17-CV-02904 (PKC) (SMG)

      - against-

IND GLATT, INC. (d/b/a I & D GLATT),
DAVID YIZHAKY, JOHN DOE 1, and
JOHN DOE 2,

                Defendants.

----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Plaintiff Alberto Saldarriaga Saldarriaga ("Saldarriaga") brings this action against Defendants IND Glatt, Inc. ("IND") and David Yizhaky ("Yizhaky") (collectively, "Defendants") for alleged violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the New York Codes, Rules, and Regulations ("NYCRR").  Before the Court is Defendants' motion for partial summary judgment, limited to the issue of establishing Plaintiff's hourly regular rate of pay under the FLSA and NYLL.  For the reasons stated below, Defendants' motion is denied.

## BACKGROUND

**I.     Relevant Facts[1]**

Defendants employed Plaintiff at IND Glatt (d/b/a I & D Glatt), a kosher butcher shop located at 482 Avenue P, Brooklyn, New York, from at least January 2015 through May 5, 2017.[2] (Defs.' 56.1, Dkt. 30-2, at ¶¶ 2, 3.)  Plaintiff was responsible for preparing salads, and later in his employment, also preparing soups. (Defs.' 56.1 at ¶ 1.)  At the time of hiring, the parties discussed what Plaintiff's regular work schedule would be, though the exact schedule the parties agreed to is disputed. (*See* Plaintiff's 56.1 ("Pl.'s 56.1"), Dkt. 30-7, at ¶ 4.)  The parties also dispute whether Defendants and Plaintiff discussed overtime pay during this initial hiring conversation. (*Compare* Defendant David Yizhaky Deposition Transcript ("Yizhaky Dep. T."), Dkt. 30-5, at 46:21–48:12, *with* Saldarriaga Dep. T., Dkt. 30-9, at 30:16–24.)  At all times during Plaintiff's employment, Defendants paid Plaintiff in equal amounts each week and increased such amounts based upon periodic pay raises over the course of Plaintiff's employment.[3] (*See* Defs.' 56.1 at ¶¶ 7, 10, 17.)  On May 5, 2017, Defendants terminated Plaintiff's employment because he had been violating kosher food preparation requirements. (Defs.' 56.1 at ¶ 3.)

---

[1]  Unless otherwise noted, a standalone citation to Defendants' 56.1 Statement ("Defs.' 56.1") denotes that this Court has deemed the underlying factual allegation undisputed.  Any citation to Defendants' Rule 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

[2]  Plaintiff disputes his employment start date and instead asserts that he began working for Defendants in January 2014, as opposed to January 2015.  (Plaintiff Alberto Saldarriaga Saldarriaga Deposition Transcript ("Saldarriaga Dep. T."), Dkt. 30-4, at 37:3–7.)

[3]  Although Plaintiff disputes that he was ever paid at, or made aware of, the hourly and overtime rates, Plaintiff does not dispute the equal weekly amounts he received from Defendants. (Saldarriaga Dep. T., Dkt. 30-9, 76:16–78:2.)

## II. Procedural History

Plaintiff filed this action on May 12, 2017, alleging that Defendants are liable for unpaid overtime violations under the FLSA and NYLL, a 'spread of hours' minimum wage violation under the NYCRR, a violation of notice and recordkeeping requirements under the NYLL, and a violation of the wage statement provisions under the NYLL. (*See generally* Complaint, Dkt. 1.) In a conference held on August 18, 2017, the Honorable Steven M. Gold referred the case to mediation before the Court's FLSA panel, but the parties failed to reach an early resolution and the case proceeded to formal discovery. (August 18, 2017 Minute Entry, Dkt. 14; October 31, 2017 Status Report, Dkt. 16.) On May 1, 2018, upon completion of discovery, a settlement conference was held, but the parties were still unable to reach an agreement. (May 1, 2018 Minute Entry, Dkt. 23.)

Defendants' motion for partial summary judgment was fully briefed on September 17, 2018. (Dkt. 30; *see also* Defendants' Brief ("Defs.' Br."), Dkt. 30-1; Plaintiff's Opposition Brief ("Pl.'s Opp. Br."), Dkt. 30-6; Defendants' Reply Brief ("Defs.' Rep. Br."), Dkt. 30-10.)

## STANDARDS OF REVIEW

### I. Summary Judgment

Summary judgment is appropriate where the submissions of the parties, taken together, "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted; alteration in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted).

In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

## II. FLSA Burden-Shifting at Summary Judgment

"When an employee brings a claim under FLSA for unpaid compensation, the employee's evidentiary burden to survive an employer's motion for summary judgment depends on the nature of the wage and hour records maintained and produced by the employer." *Lee v. Grand Sichuan Eastern (NY) Inc.*, 12-CV-08652 (SN), 2014 U.S. Dist. LEXIS 6752, at *35 (S.D.N.Y. Jan. 17,

4

2014). Under the FLSA and NYLL, employers are required to maintain adequate and accurate employee records. *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a)(7); N.Y. Lab. Law § 611; N.Y. Comp. Codes R. & Regs. tit. 12, sec. 142-2.6(a)(4). When an employer fails to uphold this legal duty under the FLSA to maintain full and accurate employee records, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 687 (1946). An employee can satisfy his burden under *Anderson* by relying solely on his own recollection. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) ("It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet this burden through estimates based on his own recollection."). Once an employee has satisfied his burden, even by relying on recollection alone, the burden shifts to the employer "to come forward . . . with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687–88.[4]

Defendants admit that they did not keep regular records during Plaintiff's employment. (Yizhaky Dep. T., Dkt. 30-9, at 29:6–14; *see also* Defs.' 56.1 at ¶ 9.) Unsurprisingly, the records

---

[4] Though courts have mainly applied this burden-shifting framework when there is a dispute as to the number of hours an employee worked, *see, e.g.*, *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 381 (E.D.N.Y 2012), it can also be applied to other FLSA disputes, like an employee's regular rate, as is the issue here, *see Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 332 n.2 (S.D.N.Y. 2005) ("Although this burden shifting framework was developed in [*Anderson v.*] *Mt. Clemens* to facilitate an employee-plaintiff's presentation of the amount and extent of *work* performed, considering the interrelatedness of work and wages, this Court sees no reason why this standard should not also be applied to an employee-plaintiff's presentation of evidence with regard to *wages* received.") (emphasis in original) (quotations and citation omitted); *see also Garcia v. JonJon Deli Grocery Corp.*, No. 13 Civ. 8835 (AT), 2015 WL 4940107, at *4 (S.D.N.Y. Aug. 11, 2015) (finding that Defendants did not meet their burden under *Anderson* to "negat[e] either the reasonableness of Plaintiff's claims regarding the number of hours worked or the presumption that Plaintiff's salary did not include a premium for overtime hours.").

provided by Defendants are incomplete, amounting to just a handful of payroll records for weeks when Plaintiff's hours deviated from his regular set schedule (*see* Defs.' 56.1 at ¶ 9), and one New York State Notice and Acknowledgement of Pay Rate, despite Plaintiff having worked for Defendants for at least two and a half years. Defendants' failure to keep adequate records for the duration of Plaintiff's employment warrants the application of *Anderson*'s lesser burden of proof. *See Kuebel*, 643 F.3d at 362 ("Consistent with *Anderson*, an employee's burden is not high."); *see also Anderson*, 328 U.S. at 687 ("The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee.").

## DISCUSSION

Under both the FLSA and NYLL, employers are required to pay their wage employees who work more than 40 hours in a single workweek overtime wages for every hour worked in excess of the first 40 hours; moreover, the overtime rate shall not be less than one and one-half times the employee's regular hourly rate.[5] 29 U.S.C. § 207(a)(1); NYLL § 190 *et seq*. "An employer is not

---

[5] An exception to this requirement is the "fluctuating workweek method," which allows employers and employees to agree to an overtime rate of only one half of an employee's regular rate. *See Stein v. Guardsmark, LLC.*, No. 12 Civ. 4739 (JPO), 2013 WL 3809463, at *3 (S.D.N.Y July 23, 2013); *see also* 29 C.F.R. § 778.114. Though Plaintiff's fixed salary, *see infra* note 6, is one of the requirements needed to apply this method of calculating overtime, neither party argues that they had contracted to use this method to calculate Plaintiff's wages, and the Court therefore declines to find that such an agreement existed between the parties. *See Luo v. L&S Acupuncture, P.C.*, No. 14 Civ. 1003 (BMC), 2015 WL 1055084, at *7 (E.D.N.Y. Jan. 23, 2015) (fluctuating workweek method applies "where an employee has a mutual understanding with his employer that he will receive a fixed amount as straight-time pay for whatever hours he is called upon to work in a workweek, whether few or many") (alterations, quotations, and citation omitted); *Ayers v. SGS Control Servs.,* No. 03 Civ. 9077 (RMB), 2007 WL 646326, at *9 (S.D.N.Y. Feb. 27, 2007) (fluctuating workweek compensation scheme only applies if, *inter alia*, the employer and the employee have a clear mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked).

exempt from paying overtime wages merely because it pays the employee a weekly salary."[6] *Amaya v. Superior Tile & Granite Corp.*, No. 10 Civ. 4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012). Determinations about an employer's compliance with FLSA and NYLL overtime requirements are made by converting an employee's weekly salary into an hourly regular rate, most often by dividing the weekly salary by the number of hours worked in a week. *See, e.g., Moon v. Kwon*, 248 F. Supp. 2d 201, 230 (S.D.N.Y. 2002); *see also* 29 C.F.R. § 778.109; 29 C.F.R. § 778.113(a).

However, when an employee regularly works over 40 hours a week, as is the case here,[7] it may be difficult to determine what that hourly regular rate is. *See Giles v. City of New York*, 41 F. Supp. 2d 308, 316 (S.D.N.Y. 1999) ("The contracting parties may have intended for the weekly salary to cover only the 40 non-overtime hours or to cover anticipated overtime hours as well."). As a result, "[t]here is a rebuttable presumption that a weekly salary covers 40 hours." *Id.* at 317; *see Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y 2012) (stating that the *Giles* presumption rests on the idea that "'[u]nless the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate, courts do not deem weekly salaries to include the overtime premium for workers regularly logging overtime, but instead hold that weekly salary covers only the first 40 hours.'") (quoting *Giles,* 41 F. Supp. 2d at 317). However, "the employer can rebut the presumption by showing an employer-employee

---

[6] Though Defendants dispute that Plaintiff was paid a fixed salary, it is undisputed that Plaintiff received equal sums each week, regardless of the hours Plaintiff worked, except when Plaintiff received periodic pay increases. (Defs.' 56.1 at ¶¶ 9, 10, 17; *see also* Yizhaky Dep. T., Dkt. 30-9, at 48:13–16; 69:6–15.)

[7] Though the parties dispute what Plaintiff's schedule was, it is undisputed that it amounted to more than 40 hours a week. (*See* Pl.'s 56.1 at ¶ 4.)

7

agreement that the salary cover a different number of hours."[8] *Giles*, 41 F. Supp. 2d at 317; *see also Ibarra v. HSCS Corp.*, No. 10 Civ. 5109 (KBF), 2012 WL 3964735, at *2 (S.D.N.Y. Sept. 10, 2012) ("[E]mployers and employees may expressly agree to a weekly salary that includes a regular rate as well as an overtime premium."). This employer-employee agreement must show that both "employees and the employer are aware that overtime compensation in a specific amount is included in the [agreement]" so that the "remedial and humanitarian" purposes of the FLSA are fulfilled. *Giles*, 41 F. Supp. 2d at 316–17; *see also id.* at 317 ("[A] finding that a salary included overtime, in the absence of proof of an agreement so stating, would be the sort of 'narrow, grudging' FLSA application that the Court rejected soon after enactment.") (citing *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)).

---

[8] Notably, most courts have allowed for employers to rebut the presumption in piecemeal fashion, finding that the employers had rebutted the assumption that a salary was meant to cover only 40 hours of work even if they did not rebut the presumption that the salary included pay at both regular and overtime rates. *See, e.g.*, *Moon*, 248 F. Supp. 2d at 207–08 (finding that plaintiff and defendants had agreed that plaintiff's weekly salary would cover 60, not 40 hours of work, but that plaintiff did not have any subjective understanding that his salary included payment at an overtime premium rate for work in excess of 40 hours a week); *see also Doo Nam Yang*, 427 F. Supp. 2d at 335 (finding presumption partially rebutted when "the plaintiff concede[d] that there was an agreement that the salary cover 50 hours of work"); *Amaya*, 2012 WL 130425, at *9 (finding no express agreement between employer and employee that salary included overtime payments, but calculating regular rate by dividing weekly salary by plaintiff's 53-hour workweek).

At trial, Defendants will be permitted to pursue such a piecemeal approach, given that they have put forth evidence to rebut the presumption. *See Berrios*, 849 F. Supp. 2d at 387 (finding full application of presumption appropriate where employer presented no evidence of an agreement specifying the number of hours employees were required to work in exchange for their salary, much less evidence of employees' understanding that their salary included pay at regular and overtimes rates); *see also Guallpa v. N.Y. Pro Signs Inc.*, No. 11 Civ. 3133 (LGS) (FM), 2014 WL 2200393, at *4 (S.D.N.Y. May 27, 2014) (finding that presumption was not rebutted when employee-employer agreement that salary covered more than 40 hours of weekly work meant that, for part of Plaintiff's employment, his hourly regularly rate failed to comply with FLSA's minimum wage requirements).

Ideally, the employer and employee have a written employment contract memorializing whether they intended an employee's weekly salary to include overtime pay at the premium rate. Though the FLSA requires employers to keep such records, *see* 29 C.F.R. § 516.5(b)(4) (requiring employees to keep "[w]ritten agreements or memoranda summarizing the terms of oral agreements or understandings" of their employment agreed for at least 3 years), neither party has offered any such written agreements or memoranda or testimony indicating that these documents exist. "While the lack of an employment contract certainly does not help Defendants' argument, it may not be fatal either." *Berrios*, 849 F. Supp. 2d at 385. "In the absence of any written instrument memorializing the parties' intentions, the Court must infer the terms of their agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record." *Moon*, 248 F. Supp. 2d at 206. This course of conduct must demonstrate that *both* parties understood what the agreement was. *See id.* at 207 (relying on employee's "subjective understanding[—]or lack of understanding[—]concerning the manner in which [his] weekly salary was to be calculated" to find that employer did not rebut *Giles* presumption). Evidence of only one party's intention or understanding will not be enough. *Cf. Berrios*, 849 F. Supp. 2d at 387 ("What is lacking from this purported agreement is any evidence that that the [p]laintiffs actually understood that their weekly wages included a premium for time and one[-]half for the hours worked over 40.").

Defendants argue that Plaintiff knew his weekly salary included payment at the regular rate of $12.80 and the overtime rate of $19.20 given that he signed several documents during his employment, such as Payroll Records and a New York State Notice and Acknowledgement of Pay

9

Rate, all of which displayed these rates.[9] (*See* Defs.' Br. at ECF[10] 7–8.) However, while the documentary evidence provided by Defendants shows that *Defendants* understood that Plaintiff's weekly salary was calculated using these regular and overtime rates, the evidence is less clear as to whether *Plaintiff* had the same understanding.

For example, the testimony from both parties regarding the initial hiring conversation reflects the differing, and conflicting, understandings regarding Plaintiff's wages. Though Defendant Yizhaky testified that he explained what overtime was and what Plaintiff's regular and overtime hourly rates would be," (Yizhaky Dep. T., Dkt. 30-5, at 47:14–48:8), Plaintiff testified that no hourly or overtime premium rate was ever expressly discussed. (Saldarriaga Dep. T., Dkt. 30-9, at 53:6–22.) Defendants offer no other evidence or testimony about this initial hiring conversation to challenge Plaintiff's recollection.

Defendants also assert that Plaintiff's signatures on several payroll stubs between September 2015 and April 2017 that list regular and overtime rates show his agreement and understanding as to these rates. (*See* Dkt. 30-4, at ECF 28, 30; Dkt. 30-5, at ECF 2, 3, 4, 5.) While Plaintiff admits that he signed three of the payroll stubs provided by Defendants (Pl.'s 56.1 at ¶ 8), he also testified that he signed them because Defendant Yizhaky asked him to and that he (Plaintiff) did not read them because they were in English, and he does not read or speak English well. (*See id.*; Saldarriaga Dep. T., Dkt. 30-9, at 64:20–65:24; *see also* Saldarriaga Dep. T., Dkt. 30-12, at 13:10–15.) Plaintiff's assertion that he did not read or understand the documents as a result of a

---

[9] Defendants also claim that Plaintiff's regular rate increased to $14.08 and his overtime premium rate increased to $21.12 in August 2016, based on provided payroll records. (Defs.' Br., at 5.)

[10] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

language barrier weighs against Defendants' argument that Plaintiff's signature reflects that Plaintiff subjectively understood that his salary included pay at both regular and overtime rates. *See Canela-Rodriguez v. Milbank Real Estate*, No. 09 Civ. 6588 (JSR), 2010 WL 3701309, at *3 (S.D.N.Y. Sept. 20, 2010) ("[W]hile [the plaintiff] does not dispute signing some of these sheets, there is no evidence in the record indicating . . . that the plaintiff, whose abilities to read, speak, or understand English are limited, understood what he was signing.") (citation omitted); *see also Berrios*, 849 F. Supp. 2d at 387 (noting that Defendants' case is not helped when employer communicated about employment in English when "employees spoke little, if any, English").

Finally, Defendants provide a New York State Notice and Acknowledgement of Pay Rate, stating Plaintiff's purported regular and overtime rates in both English and Spanish, that was signed by the Plaintiff on January 3, 2016. (Dkt. 30-4, at ECF 26.) Plaintiff stated that while he signed the form, he does not remember whether it was filled out when he signed it and that when he signed it, he still was not getting paid overtime. (*See* Saldarriaga Dep. T., Dkt. 30-9, at 56:5–25.) While Plaintiff's failure to recall whether the document was filled out when he signed it is not enough to create a genuine issue of material fact, *see Carter v. Newsday, Inc.*, 528 F. Supp 1187, 1191 (E.D.N.Y 1981); *Harris v. City of New York*, No. 15-cv-8456 (CM), 2017 WL 6501912, at *4 (S.D.N.Y. Dec. 15, 2017), his recollection that he still was not getting paid overtime despite signing the form—evidence that is given significant weight under *Anderson*—is enough to do so. (Saldarriaga Dep. T., Dkt. 30-9, at 53:2–8. ("But I never worked by the hour; I worked by the week. [Defendant Yizhaky] never told me that he was going to pay me by the hour.").) Furthermore, if Plaintiff's subjective understanding before signing the form was that his salary did not include overtime pay, the mere act of signing a form, if his pay remained functionally the same after signing, is at least enough to create a triable issue of fact as to what Plaintiff's subjective

understanding of his employment agreement with Defendants was.[11]  Ultimately, whether Plaintiff's assertion that he was not paid overtime is believable, despite signing a document in Spanish attesting otherwise, requires a determination of credibility that belongs to a jury. *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of events are matters for the jury, not for the court on summary judgment.") (citations omitted).

Defendants have failed to show, through their course of conduct with Plaintiff, that there is no genuine factual dispute as to whether both parties subjectively understood that Plaintiff's weekly salary included payment both at the regular rate of $12.80 and an overtime rate of $19.80.[12] Though the evidence does suggest that Defendants intended this to be the arrangement, the FLSA and NYLL require that this understanding be mutual. *See Giles*, 41 F. Supp. 2d at 316–17. Defendants have failed to meet their burden under summary judgment to show that there is no factual dispute as to whether Plaintiff had the same understanding as Defendants regarding his wages. Plaintiff's own recollections, given significant weight under *Anderson*'s FLSA burden-

---

[11] Defendant Yizhaky testified that Plaintiff's pay rate did not change until August 2016. (Yishaky Dep. T., Dkt. 30-9, at 70:9–11.)

[12] While Defendants have rebutted the *Giles* presumption to the extent that the evidence before the Court on the instant motion shows that Plaintiff agreed and understood that his weekly salary would cover a specific number of hours over 40 per week (Pl.'s 56.1 at ¶ 4), and the Court would be inclined, as in *Moon*, *Doo Nam Yang*, and *Amaya* (*see* discussion *supra* note 8), to determine Plaintiff's hourly rate by dividing Plaintiff's weekly salary by the number of hours he worked per week, the Court cannot do so, given the admitted factual dispute as to how many hours Plaintiff regularly worked per week  (Pl.'s 56.1 at ¶ 4).

shifting scheme, that he was not paid hourly and that he never received overtime pay are enough to defeat Defendants' summary judgement motion.[13]

## CONCLUSION

For the reasons stated above, Defendants' motion for partial summary judgment is denied. Disputed questions of material fact remain with regard to Plaintiff's hourly regular rate of compensation that will be determined at trial. The parties shall submit a Joint Pretrial Order by April 22, 2019.

                                                                         SO ORDERED.

                                                          /s/ *Pamela K. Chen*
                                                          PAMELA K. CHEN
                                                          United States District Judge

Dated: March 25, 2019
       Brooklyn, New York

---

[13] The Court recognizes the improbability of Plaintiff's claim that Defendants initially agreed to compensate him at a regular hourly rate of $13.11 ($800 for 61 hours, using the higher number of hours claimed by Plaintiff) or $14.55 ($800 for 55 hours, using the lower number of hours asserted by Defendants) and later $14.43 ($880 for 61 hours, using Plaintiff's hours) or $16 ($880 for 55 hours, using Defendants' hours), *plus* overtime at premium rates of $19.67, $21.82, $21.64 and/or $24 per hour, to make salads and soups. However, improbability is an insufficient basis to justify a ruling, as a matter of law, that Plaintiff's version of events is incorrect or untrue, in light of the presumption that applies under *Giles* and the weight given to Plaintiff's recollection under *Anderson* because of Defendants' failure to meet their legal record-keeping obligations.